## OBSTRUCTION IN STREET FROM ABUTMENTS OF OVERHEAD RAILROAD BRIDGE.

THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY v. THE CITY OF ELYRIA.

69 Ohio State—Decided, January 19, 1904.

*Action by Solicitor of City—To Compel by Mandatory Injunction— Railroad Company to Remove Abutments from Street—Section 5114, Revised Statutes—Petition May be Amended, When—Name of Plaintiff May be Changed—Railroad Company Waives Rights as to change, When—Contract Between City and Railroad Company as to Overhead Crossing of Streets—Requirement of Council's Authority—General Legislation Insufficient, When—Section 3283, Revised Statutes, not Authority to City, When—Law of Right of Way —Municipal Corporations—Injunction.*

1. In an action brought by the solicitor of a city or village in his own name as such, and also as a tax-payer, but in behalf of the corporation, to compel by mandatory injunction a railroad company to remove from a public street its abutments placed therein to support an overhead crossing of its railroad, the court, under favor of Section 5114, Revised Statutes, in furtherance of justice and upon proper terms, may amend the petition by striking from the title of the cause the name of the solicitor and tax-payer, and adding in lieu thereof the name of the city or village as plaintiff and the real party in interest, in which name the action may proceed against the defendant; and in like manner and for like purpose the court may amend the body of the petition by striking therefrom the name of the solicitor and tax-payer and other words describing his relation to the cause of action.

2. By appealing from a final decree made on the issues subsequently joined between the parties, the railway company waived its right to complain of such amendments on hearing of the cause on the appeal.

3. Where a railroad company, for the purpose of supporting its overhead crossing of a public city or village street, erects and maintains abutments which occupy a portion of the street, excluding the public therefrom, and claims the right to do so under a contract made with the municipal council, it must appear that the council was authorized by statute in express terms, or by clear implication therefrom to make such contract; and mere general legislation authorizing a railroad company to occupy a street for the purposes of its road, is insufficient for such permanent and exclusive use. *Ravenna* v. *The Pennsylvania Co.*, 45 Ohio St., 118, approved and followed.

4. Section 3283, Revised Statutes, does not authorize a city or village
   · council to agree with a railroad company for the permanent and
   exclusive occupation of a public street with abutments to support
   an overhead crossing of the railroad; nor can such occupation
   be rightly gained by means of appropriation; and if the company
   so occupying the streets refuses to restore it to its former condi-
   tion of usefulness to the public, it may be compelled to do so by
   mandatory injunction, without a right to compensation for the
   expense of removal.

Error to the Circuit Court of Lorain County.

The action as originally instituted against the plaintiff in
error, was brought in the name of "Frank M. Stevens, as city
solicitor, and as a tax-payer on behalf of the city of Elyria,"
and the petition alleged that "he is a tax-payer and that he
brings this action both as solicitor for said city and as a tax-
payer in behalf of said city."

The petition thus styled, complained that the railway com-
pany owned, operated and controlled, for the fifteen years last
past, a certain railroad extending through the city of Elyria,
crossing Huron, West Bridge and West River streets at their
intersection, and that the ground at this intersection, long prior
to the organization of the railway company, was established as
a county road sixty-six (66) feet in width, which by annexa-
tion proceedings has become a street of the city; and that
prior to February 24, 1890, the company had maintained its
tracks at this point at grade with the street, leaving the
highway unobstructed to its full width; that on or about Feb-
ruary 24, 1890, the railway company changed its crossing from a
grade to an overhead crossing, and that in so doing it placed
high abutments on which to rest its tracks, within· said street on
both sides thereof, thereby narrowing the highway twenty-six
feet, wholly depriving the public of the use of that part of the
same.   A sidewalk six feet wide was constructed on one side
of the remainder of the street, so that the driveway, not occu-
pied by the two abutments and said sidewalk, is only thirty-four
feet wide.

The petition further charges that the acts complained of
make the street or highway at West River street narrow, dan-
gerous and grossly inadequate for the use of the public, and
render the same dangerous to both life and property, owing to

the increase of population of the city and vicinity, and that the public needs the full and unobstructed width of the street.

It is alleged that any contract between the authorities of the municipality and railway company by virtue of which said abutments were placed in the street, is illegal and in excess of the powers vested in the council of the city, and that it has repudiated and does now repudiate such contract, and any arrangements which may have been formerly made for that purpose; and that the city, before this action was commenced, repeatedly demanded that the railway company remove the abutments from the street, which it has refused to do.

The prayer is for a decree declaring void any contract by which the company claims the right to so occupy the street, and for an order that the abutments be removed.

The railway company filed an answer to the petition, and denied that it legally occupied the street with such abutments, and asserted that its acts with reference thereto were duly authorized. It also denied that the public needs the full width of the street at the point of crossing. After the issue was thus made up, the plaintiff asked and obtained leave to amend the petition, by striking from the name of the plaintiff the words, "Frank M. Stevens, as city solicitor of the city of Elyria, and as a tax-payer on behalf of," leaving the words "The City of Elyria," as the name of the plaintiff. The motion also asked leave to strike from the body of the petition all words showing the relation of the solicitor and tax-payer as such, to the cause of action, eliminating them in name and averment from the case.

The company resisted the motion, but it was allowed, and the company excepted. It also moved to strike the petition from the files, because of erasures and interlineations. This motion was overruled and a bill of exceptions taken.

The petition was rewritten as an amended petition, reforming it as to the title of the action and to otherwise conform to the changes permitted by the court. The action proceeded thenceforth in the name of "The City of Elyria" as plaintiff. The defendant answered the petition as reformed, preserving the original title of the case. On motion this answer was stricken from the files for that reason, and the company excepted. Sub-

sequently the defendant filed an amendment to the former answer, under the new title as to the plaintiff, and afterwards filed a second amended answer, wherein it protests that the court had lost jurisdiction over it because of the substitution of The City of Elyria as plaintiff, and that the petition is insufficient to require an answer. It does not deny that the driveway between the abutments is but thirty-four (34) feet in width. The necessity for a greater width is denied, as well as all other allegations as to the present dangerous character of the same.

The answer proceeds to set out that prior to the acts complained of it exercised the rights conferred upon it by Section 3277, Revised Statutes, in order to improve its road from Sandusky to Elyria and beyond, by taking out curves and reducing grades. In order to render the highway across its road at West River street less dangerous and difficult to the public, the company determined to construct an overhead crossing, for which purpose abutments were erected in West River street at points named in the petition, to support the railroad tracks; and to accomplish this change and in order to restore the street to its former condition of usefulness, the defendant, in February, 1890, entered into an agreement with the authorities of the city, whereby the manner, terms and conditions upon which the company might use and occupy the street were agreed upon, and that in pursuance thereof the abutments were placed where they now are.

For a second defense the two-year statute of limitations is plead. The allegations of new matter contained in the answer are denied by a reply. On the issues thus framed the cause was tried in the court of common pleas, and the prayer of the petition was granted.

The defendant appealed from the decree to the circuit court, where defendant renewed its motion to strike the amended petition from the files because of the substitution of "The City of Elyria" as plaintiff in the common pleas court, and because of erasures and interlineations made in the petition by permission of that court. The motion was overruled, and the company excepted.

The cause was heard in the circuit court on the evidence, and on request the court found the facts, part of which are as

above stated. The other material facts appear in the opinion.

The court also found that the "abutments obstructed the public highways and wholly excluded the public and the plaintiff from the use and enjoyment of the parts of said highway occupied by said abutments, *but that public necessities do not require the removal of said east abutment at the present time.*"

The court held, as a matter of law, that the municipal authorities had no power to make the contract for placing the abutments within the street, and that so occupying the street is a public nuisance; and the court ordered that by a day certain the company remove the west abutment, but declined to make such order as to the east abutment. Both parties prosecute error in this court.

*E. G. Johnson, M. R. Dickey* and *Geo. C. Greene,* for plaintiff in error.

*F. W. Stevens* and *W. W. Boynton,* for defendant in error.

PRICE, J.; BURKET, C. J., SPEAR, SHAUCK and CREW, JJ., concur.

Preliminary to a consideration of the main controversy, we are requested and strongly urged by counsel for plaintiff in error to pass on a question of practice that arose in both the lower courts. It relates to the change in the title of the cause which was permitted by the court of common pleas, whereby the words "Frank M. Stevens, as city solicitor of the city of Elyria, and as a tax-payer of," were stricken from the style of the case, leaving the words, "The City of Elyria" as the name of the plaintiff in the case. It is claimed that granting such change was in violation of Section 4972, Revised Statutes, providing, " * * * and the title of a cause shall not be changed in any of its stages, except when the defendant prosecutes error." The plaintiff in error objected to the striking out of the above words and excepted to the overruling of its objection. The same question further appears in a motion to strike off the petition because of such change, on the alleged ground that the court no longer had jurisdiction over the defendant in the case.

It is well to note that there are other sections of the statute which closely bear on this point, which must be looked to for a

proper determination of the question made. Section 4993 requires that an action must be prosecuted in the name of the real party in interest, and Section 5114 provides most liberally. for amendments of pleadings. Under its authority the "court may * * * amend any pleading, process or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case * * *." The court is authorized to prescribe the terms on which the amendment may be made. It is quite true that it is not within the right or power of a party to the suit to change the title of a cause of action in any of its stages, except where he is a defendant and prosecutes error. But when the power of the court is invoked under Section 5114, we find that a name of a party may be added or stricken out; and, if that can be done by the court, it may do both in one order—that is, strike out the name of a party and add or substitute the name of another.

This case presents a very fair illustration of the proper exercise of such authority. While the suit was instituted with the title of "Frank M. Stevens, as city solicitor of the city of Elyria, and as a tax-payer," it was so instituted on behalf of the city of Elyria as the real party in interest, and an inspection of the original petition shows that the facts alleged are facts in which the city alone is interested, as a trustee of the public. The relief sought is relief in the interest of the city. Stevens, as solicitor and tax-payer, sought no personal relief, and it is doubtful whether, in fact, there has been any material change in the title of the cause of action. The city of Elyria appeared in the title as the real party in interest, and it so appeared in the averments of the petition. The cause of action was not changed, and all its substance remained after the so-called substitution, except the elimination therefrom of such words as the name of the *solicitor* and *tax-payer* where they occurred, and averments connecting them with the cause of action. The case was finally tried on the same cause of action, stripped of the unnecessary incumbrance first thrown around it.

In such case, we have no doubt, a court may amend the pleading by substituting the name of the real party in interest and

striking out the name of an unnecessary party, and one who has no interest in the controversy. The cause of action still remains against the defendant and the court could not lose jurisdiction over the party in doing what it plainly had authority to do in this case.

There is another and conclusive answer to the claim of plaintiff in error in this court. The defendant, as a matter of course, was required to answer the petition as amended, with an answer bearing the same title. It objected to this, but complied with the order of the court.

The issues were made up between the parties under the new title, and under such title the decree of the court was made from which the defendant appealed to the circuit court. The appeal did not reach back to the rulings of the court in reforming the petition, as might be the case on a demurrer filed and ruled on, but the appeal was from the decree made on the issues as joined.

If the plaintiff in error had desired to review the questions of change of title and the kindred changes made in the petition, the remedy was error and not appeal. It excepted to the rulings of the court, but abandoned them, at least for the time being, in selecting a remedy by appeal. Therefore, such questions did not pass up with the appeal to the circuit court for its judgment, and are, therefore, not before us in this proceeding. The same remark may be made to the erasures and interlineations made in the petition which are complained of. The court permitted them to be made. It seems they were not serious enough to prevent the court and counsel from understanding them, and a fairly good petition has survived and found its way from the lower courts to this court, as appears in the printed record. Thus far the plaintiff in error has no ground for reversal.

We now reach the more serious and substantial controversy. Both parties to this proceeding are here complaining of the decree of the court and asking for reversal; one of the command to remove the west abutment, and the other praying for a reversal of that portion of the decree in which the court declined to order the removal of the east abutment.

The claims of each party rest upon the same facts and must be adjudicated under the same rules of law. These respective

claims stand or fall as the question may be answered: Had the council of the village of Elyria the power to contract with the railway company for the permanent occupancy of portions of the street with the abutments to support its tracks as an overhead crossing?

The circuit court has found that the portion of West River street where these abutments stand once formed a part of an established county road sixty-six feet in width, and that it was laid out, opened and used by the public as such; and, further, that long prior to the erection of the abutments and the making of the alleged contract under which the railway company erected them, that portion of the county road was taken into the village of Elyria by proper proceedings of annexation, and thereafter continued to be a street of the same width. The public, therefore, had the right to use the same to its full width free from obstructions, and it was so used until the committing of the acts complained of, in the year 1890.

It is well to know the precise nature of the contract relied upon by the railway company, and also what was done thereunder by the parties. To conform with a general improvement and betterment of its road-bed, and eliminate difficult and dangerous grades and curves on a portion of its line, it seemed to be necessary to raise the grade at West River street and other points, and it was done. But this made the crossing of the street more difficult and dangerous to the traveling public. An overhead crossing was determined upon by the railway company, and it applied to the village authorities for permission to make that kind of a crossing, and submitted to them plans and profiles for the purpose, which embraced the placing of the east and west abutments for the support of the track within the street. Action was taken upon these plans by the village council, and a resolution was adopted in February, 1890, of which the following in part is a copy:

"*Be it resolved by the council of the village of Elyria, Ohio* That the proposed changes in the grade and construction of the streets of said village, at their intersection with the Lake Shore & Michigan Southern Railway track and the Cleveland, Lorain & Wheeling tracks, shown on the plans and profiles above referred to in the preamble, are approved as proper restorations of said streets to their former usefulness, with the following modifications," etc.

One of the modifications made was a change from thirteen and one-half feet to fourteen feet in the height of the crossing above the street at West River street. This, with other modifications, was accepted by the railway company and became the contract upon which the plaintiff in error relies. The language of the resolution must not be overlooked, where it is said that the proposed changes in the grade as shown on the plans and profiles, etc., "are approved as proper restorations of said streets to their former usefulness." The defendant in its amended answer avers: "That in order to properly make such change of location and grade, and to construct such under crossing, and to put such street in such condition as not to impair its former usefulness, it became and was necessary in the location of that part of such street, and being the same part now occupied by the abutments of said defendant company," etc. It is alleged that for this purpose the contract above set out was entered into.

From this averment of the answer and the language of the resolution, it is very clear that both parties, the village council and the railway company, acted with some deliberation. The sections of the statute under which the council acted must have been examined and the extent of its powers considered, and the company recognized its obligation to restore the street to its former state of usefulness, and the council, in the resolution adopted, was of the opinion that, if the changes were made as proposed, there would be a restoration of the street to its former condition of usefulness. This was the opinion of that council on the then existing conditions, such as the extent of the population and business of the village and the general public of which it formed a part. But did it become binding for all time, no matter what the increase of population, business and public travel might be in after years? The answer admits that there has been a growth of the village into a city and a large increase of population in the section of the city where this crossing is situate; and it would seem difficult to maintain the proposition that the opinion of the council in the year 1890 should bind the public perpetually, although the public should need the free and unobstructed street to its full width. When the city annexed the territory which embraced the county road, the title

in fee to such part of the county road vested in the city in trust for the public. Such is the title of a village or city to a street, and the statute commands the council to keep it open, in repair, and free from nuisance. See Section 2640, Revised Statutes.

But the plaintiff in error plants its right to remain in the street upon one or more sections of Revised Statutes, which it is said fully authorized the council to make the contract in question.

In its answer, it is alleged that its line of road between Sandusky and Elyria was difficult and dangerous, on account of grades and curves, and that it became necessary in order to avoid annoyance to the public and the difficult and dangerous grades to raise the grade; that in exercise of rights conferred upon it by Section 3277, Revised Statutes, it raised its grade at West River street and other points on its line at great expense. This section empowers a railway company to change the location or grade of any portion of its road "for the purpose of avoiding annoyance to public travel, or dangerous or difficult curves or grades, or unsafe or unsubstantial grounds or foundation, or when the road-bed has been injured or destroyed by the current of any river, water-course, or other unavoidable cause, * * * but shall not depart from the general route prescribed in the articles of incorporation." This section, just as it says, confers power to cure curves and grades along its line, or obtain more secure and substantial foundations for its road-bed within the general course of the line, but makes no provision for the crossing of a street within a municipal corporation. The next section (3278) provides for appropriation of land needed in order to make the above necessary changes. It is not claimed by counsel for plaintiff in error that the above section enables a municipality to contract with a railroad company for the use of a street, because it plainly relates to a road-bed at other points on its line, where no municipal grant is required. On the contrary, it is thought that vital power is conferred on the council by Section 3283, Revised Statutes, and that under its provisions the contract relied on is valid and enforceable.

The language of this section is in part:

"If it be necessary, in the location of any part of a railroad, to occupy any public road, street, alley, way, or ground of any kind, or any part thereof, the municipal or other corporation, or public officers, or authorities, owning or having charge thereof, and the company, may agree upon the manner, terms, and conditions upon which the same may be used or occupied; and if the parties be unable to agree thereon, and it be necessary, in the judgment of the directors of such company, to use or occupy such road, street, alley, way, or ground, such company may appropriate so much of the same as may be necessary for the purposes of its road, in the manner and upon the same terms as is provided for the appropriation of the property of individuals.''

It is upon this section the railway company now most confidently relies as the authority for the contract made with the council. Does it authorize the council to grant to a railway company the *exclusive* and permanent right to occupy a public street or part of it at a crossing or elsewhere? Or does it merely authorize a joint occupancy? We have no doubt that the General Assembly, representing the sovereignty of the state, may empower municipal councils to make the larger grant and confer the exclusive use, but has it done so by the foregoing legislation? We think not.

To establish, lay out and open up a county road or a public street, the statutes have made clear and distinct provisions, and when the road or street is no longer of public use or utility, provisions equally clear and distinct are made for their vacation, of all which public records are made, and we find nowhere any other method of vacating such public highway or any part of it.

By the proper establishment and opening of the street, the village or city becomes vested with the full title thereto, in trust for the public, and it is not within the delegated powers of the municipal council to barter or grant away such title except in the mode provided for the purpose. In the liberality of our laws, and in proper recognition of the necessities and benefits of railroad enterprises, a joint use is permitted, and the railway company, in a manner, and upon such terms and conditions as it and the council may agree, may occupy a road, street, alley, way, etc. But its occupancy must not extinguish the prior title and use and permanently exclude the public. It can not destroy the dominant right of the public. To authorize the council,

the municipal authorities, to grant more than a joint occupancy, requires clear and express language in the statute to that effect, and which we do not find in the section. The right to "occupy," where there is a prior existing use or easement, does not mean that the first or existing use or easement is ousted and the "occupancy" of the railroad exclusive. This view becomes clear when we examine the clause, which provides that where the council and the company can not agree upon manner and terms of occupancy it may appropriate so much of the streets, or alley, etc., as "may be necessary *for the purposes of its road,* in the manner and upon the same terms as is provided for the appropriation of the property of individuals."

If this company and the council had been unable to agree and the former had resorted to appropriation, what would it have obtained by the proceeding? A title in fee in portions of the street desired, or a perpetual easement therein to the exclusion of the public? Certainly not. It would have obtained a right in common with the public to occupy the street or part of it. The appropriation would have been made "in the *manner* and upon the *same terms* as provided" for cases of individuals, which means the method of procedure and terms of compensation. It does not undertake to measure the title which the company may acquire. To go beyond a joint occupancy or use of the street, the statute must speak in clear and unmistakable language. There can be no authority in such cases by implication, unless it is unmistakable. This court has held the substance of this doctrine on more than one occasion. It will be sufficient to notice but a few of such cases.

In *Railroad Company* v. *The Commissioners of Greene County,* 31 Ohio St., 338, the following was held as part of the syllabus:

"Power given by a charter of a railroad company to construct its road across a public highway upon condition that the same be restored to its former state, 'or in a sufficient manner not to impair its usefulness,' does not authorize the company permanently to appropriate any portion of the public highway by obstructions, which may materially interfere with the public travel."

In the opinion of the court on page 347, it is said:

"But it was never intended to invest the company, without the burden of compensation, with the right to narrow the width

of the highway or materially to interfere with its facilities for public travel; much less with the right to incumber the same, as was done here, with abutments and embankments which effectually exclude the public from the use and enjoyment of the greater part of it. * * * The fact that the public travel over the road may, for the time being, be limited, does not lessen the duty to restore. Roads and highways are established to subserve the future needs of the public as well as the present.''

The court further held in that case that the statute of limitations did not run in favor of such encroachments upon the public highway.

In *Railroad Co.* v. *Defiance,* 52 Ohio St., 262, there is an extended discussion of the question before us. Counsel for plaintiff in error labors in 'vain to show the irrelevancy of that case. There the plaintiff in error, in large degree, stood on the provisions of Section 3283, as is done here. For the sake of brevity, we omit a quotation of sections 5, 6 and 7 of the syllabus, which are very clearly in point. We note the language of Williams, J., on page 309:

''The statute, we think, does not contemplate the destruction of the street, or the cessation of its use by the public, or its withdrawal from the control and supervision of the proper municipal officers; nor is authority found in it for any agreement having such results. On the contrary, the statute recognizes the street so burdened with a railroad as a 'public street,' with all that term imports.''

That case was taken on error to the Supreme Court of the United States, where the judgment of this court was affirmed (See *Wabash Railroad Co.* v. *Defiance,* 10 O. F. D., 480; 167 U. S., 88). In the course of the opinion in that case, Justice Brown, speaking of another case, on page 97, says:

''If the court, however, is considered as holding that an agreement or license to construct bridges, which is silent as to time, should be construed as an agreement that they are to remain in perpetuity, we should find ourselves confronted with too many authorities to the contrary, to accept it as a sound exposition of the law. Indeed, the general principle that the legislative power of a city may control and improve its streets, and that such power, when duly exercised by ordinances, will override any license previously given by which the control of a certain street has been surrendered to any individual or corporation, is

so well established both by the cases in this court and in the courts of the several states, that a reference to the leading authorities upon the subject is sufficient. Indeed, the right of a city to improve its streets by regrading or otherwise is something so essential to its growth and prosperity that the common council can no more denude itself of that right than it can of its power to legislate for the health, safety and morals of its inhabitants.''

In *Zanesville* v. *Fannan*, 53 Ohio St., 605, our question was indirectly involved, and Section 3283, Revised Statutes, was again considered.

On page 614, Williams, J., laid down the following as its construction:

''Any permanent obstruction or incumbrance in any street of a municipal corporation is made a nuisance by statute (Section 6921, Revised Statutes), which the municipal authorities are invested with the power and charged with the duty of removing (Sections 1690, 1878, 1934 and 2640, Revised Statutes). And those powers and duties continue when a railroad company has placed its tracks in a public street, whether they were so placed under permission granted by the municipality or under an appropriation for that purpose. In neither event are the municipal authorities divested of their powers, nor absolved from the performance of their duties. Nor does Section 3283 contemplate that a railroad company in the use of a street for the purposes of its road under a right acquired in either of the modes provided, may destroy the same, or create nuisances therein.''

The doctrine here quoted is but the consensus of former opinions of this court and of those of other jurisdictions. As illustrative of the law held in the latter, we think it sufficient to refer to the leading case of *Delaware, L. & W. R. R. Co.* v. *The City of Buffalo,* decided in 1899 by the Court of Appeals in New York, found in 158 N. Y., 266. That court had the precise question we are deciding. The railroad company constructed its railway across Main street in the city of Buffalo. The structure rested upon abutments and piers, all placed in the street, which at that point was ninety feet wide. The company was afterwards warned to remove them, but, refusing to do so, claimed legislative and municipal authority for placing the structures in the street. It seems that the laws of New York

authorize railroad companies to construct their roads across, along, or upon any street or highway with the assent of the municipal authorities. That is about all that can be claimed for Section 3283.

In that case the court of appeals expressed the following principles in the syllabus:

"2. When a railroad company relies upon a legislative act as a justification for the occupation of a public highway with its piers and abutments, it must show that the statute authorized in express terms or by clear and unquestionable implication the doing of the very acts complained of, or that the statute was imperative and could not be executed without causing a nuisance.

"3. Mere general legislative authority to a railroad company to cross a city street with the consent of the local authorities gives it no right to occupy a large portion of the street with abutments and piers for the support of its structure, to the great inconvenience and detriment of the public.

"4. Municipal authorities, in the exercise of the power to permit railroads to cross streets, are not authorized to surrender to the railroad the exclusive use of a considerable portion of the street for the erection and maintenance of abutments and piers to sustain an elevated structure."

All the judges sitting concurred in the decision. On a rehearing granted, the case was again fully heard and considered as seen on page 478 of same volume of reports. The former judgment was adhered to by a unanimous court.

Further citation of authorities, we think, is not necessary. Whether Section 3283, or Section 3284 is depended upon by the railway company in this case, the results are the same. Under neither has there been a restoration to the former condition of usefulness contemplated by law, nor can there be with the abutments which occupy twenty-six feet of the width of the street. Under neither section has a municipal council the power to permit or grant to a railway company the exclusive and permanent occupation of a public street. To confer such power, the legislation must be express and clear to that effect, as held in *Ravenna* v. *Pennsylvania Co.*, 45 Ohio St., 118.

Looking to the various sections bearing upon the subject of the present litigation—Sections 2640, 3283, 3284 and 6921—we must construe them so as to give to each its intended operation. They are equally venerable as a part of our statute law, and we

think our views will permit each to be enforced with fairness to all parties concerned, the public, the individual, and the corporations.

As to the plea of the statute of limitations made in the answer it is sufficient to say that it is the well settled law of this state that encroachments upon a public highway never ripen into a title by adverse possession, nor is such title plead in this case.

There is one more contention made by plaintiff in the reply brief. It is urged that to compel a removal of these abutments which, with the overhead structure cost the railway company ten thousand dollars, will take its property without due process of law, and thus violate a constitutional right. The brief says, on page 16:

"We insist that we have shown that we have property in the abutments on this street, and that due process of law requires that before they shall be taken from us the city must provide by resolution or ordinance for an improvement of this street, which would require the removal of these abutments, furnish notice of the same and give us an opportunity to present and maintain our claim for damages, and as nothing of the kind was done in the case at bar, we maintain that this mandatory injunction takes our property without due process of law."

This position shows much fortitude, and is at least peculiar. It assumes that the grounds where the abutments stand had ceased to be a part of the public street to such an extent that to get rid of them the city must appropriate and pay compensation for their removal. We have seen that the railway company did not and could not lawfully get the right to place the abutments in the street, and that their presence tends to a permanent obstruction of the highway, without authority of law. The city is seeking to restore the street to its former condition of usefulness, which the company agreed, but failed to do, and it is in no condition to invoke the rule for appropriation cases. It would be strange indeed, if the railway company has a right to compensation from the city for the removal of a nuisance in the street which, through wrong or mistake, was erected therein. The circuit court declined to order the removal of the east abutment, saying in its finding that "present necessities of the public do not require it." The city, by cross-petition in error, asks a reversal of that portion of the decree and a judgment in

its favor. It is true that the east abutment at its widest part is only about five feet in the street, but we are unable to see a legal distinction between it and the west abutment. The controversy has been serious, and we think the door should be closed, so far as practicable, against further expensive litigation, and settle now all the questions litigated. On the facts and law we feel justified in so doing.

We therefore affirm the judgment of the circuit court relating to the west abutment, and reverse it as to the east abutment, and order the removal of both by a day stated in the journal entry.

*Judgment affirmed as to the west abutment, and reversed as to the east abutment, and as to it, judgment in favor of defendant in error on its cross-petition.*

Davis, J., concurs in first and second sections of the syllabus, and dissents from the third and fourth, and also the judgment.